DOCKET NO.: 24-14082-G

United States Court of Appeals

*for the*

Eleventh Circuit

───────◆───────

JOSEPH WM. NUSSBAUMER, JR.,

*Plaintiff/Appellant,*

v.

SECRETARY SHEVAUN HARRIS,
in her official capacity as Secretary
of the Florida Department of
Children and Families,

*Defendant/Appellee.*

───────────────────────────────

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
CASE NO.: 4:22-cv-00448-MW-MAF

───────────────────────────────

**APPELLANT'S INITIAL BRIEF**

───────────────────────────────

Jeremy D. Bailie, Esq.
Sandford Blaine Kinne, Esq.
Weber, Crabb & Wein, P.A.
5453 Central Avenue
St. Petersburg, Florida 33710
(727) 828-9919
*Counsel for Appellant*

i

## CERTIFICATE OF INTERESTED PARTIES
## AND CORPORATE DISCLOSURE STATEMENT

Docket No.: 24-14082-G

*Joseph Wm. Nussbaumer, Jr. v. Secretary Shevaun Harris, in her official capacity as Secretary of the Florida Department of Children and Families*

Undersigned counsel of record for Appellant, Boyle & Boyle, Inc., submits the following Certificate of Interested Persons and Corporate Disclosure Statement pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rules 26.1-1 and 26.1-2 of the Rules of the United States Court of Appeal for the Eleventh Circuit:

1. Bailie, Jeremy D. (counsel for Appellant)

2. Fitzpatrick, Martin A. (U.S. District Court Magistrate Judge)

3. Hurtado, Martha (trial counsel for Appellee)

4. Kenny, Joseph P. (trial counsel for Appellant)

5. Nussbaumer, Jr, Joseph. (Plaintiff/Appellant)

6. Office of the Attorney General (Office of Appellee's counsel)

7. Secretary Shevaun Harris, in her official capacity as Secretary of the Florida Department of Children and Families (Defendant/Appellee)

8. Sutter, Christopher M. (appellate counsel for Appellee)

9. Walker, Mark E. (U.S. District Court Judge)

10. Weber, Crabb & Wein, P.A. (Office of Appellant's counsel)

I hereby certify that no publicly-traded company or corporation has an interest in the outcome of the appeal.

C-1 of 1

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument in this case as Appellant believes it will materially assist the Court in resolving the legal question presented. This case involves an application of first impression of this Court's and the Supreme Court's First Amendment case law to determine whether Dr. Nussbaumer's speech to his patients is his speech or government speech.

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT ........................................................ C-1 of 1

STATEMENT REGARDING ORAL ARGUMENT ................................................. ii

TABLE OF CONTENTS ......................................................................................... iii

TABLE OF AUTHORITIES ................................................................................... iv

STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION ...................................................................................................... 1

STATEMENT OF THE ISSUES ............................................................................. 1

STATEMENT OF THE CASE ................................................................................. 2

STANDARD OF REVIEW .................................................................................... 10

SUMMARY OF THE ARGUMENT ...................................................................... 10

ARGUMENT .......................................................................................................... 10

I.    DR. NUSSBAUMER'S SPEECH IS NOT GOVERNMENT SPEECH AND IS THUS PROTECTED BY THE FIRST AMENDMENT. ............. 10

    A. The State has the Burden of Persuasion in its Attempt to Restrict Dr. Nussbaumer's Speech. ..................................................................... 12

    B. The History of the BIP Certification Shows it is Not Government Speech. ...................................................................................................... 13

    C. Speech between a Therapist and His Patients is Not the Kind of Speech Closely Identified with the Government. .................................... 15

    D. The Government has Never Exercised Control over the Messages Conveyed. ................................................................................................. 19

II.   THE REGULATION IS A VIOLATION OF DR. NUSSBAUMER'S FIRST AMENDMENT RIGHT TO FREE EXERCISE OF RELIGION. ...................................................................................................... 24

CONCLUSION ....................................................................................................... 28

CERTIFICATE OF COMPLIANCE ..................................................................... 29

CERTIFICATE OF SERVICE .............................................................................. 30

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Cambridge Christian Sch., Inc. v. Florida High Sch. Athletic Ass'n, Inc.*
  942 F.3d 1215 (11th Cir. 2019) ................................................................ passim

*Carson as next friend of O. C. v. Makin*
  142 S.Ct. 1987 (2022) ...................................................................... 25, 28

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*
  508 U.S. 520 (1993) ..................................................................24, 25, 26

*Espinoza v. Montana Dep't of Revenue*
  140 S. Ct. 2246 (2020) ........................................................................ 28

*Estape v. Seidman,*
  269 So. 3d 565 (Fla. 4th DCA 2019) .................................................... 22

*Fulton v. City of Philadelphia, Pennsylvania*
  593 U.S. 522 (2021) ..................................................................24, 25, 27

*Garcetti v. Ceballos,*
  547 U.S. 410 (2006) ............................................................................ 12

*J.C. v. Dep't of Agric. & Consumer Services, Div. of Licensing,*
  389 So. 3d 744 (Fla. 1st DCA 2024) .................................................... 16

*Jaffee v. Redmond,*
  518 U.S. 1 (1996) ................................................................................ 18

*Kennedy v. Bremerton Sch. Dist.*
  597 U.S. 507 (2022) ............................................................................ 25

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Com'n*
  584 U.S. 617 (2018) ............................................................................ 25

*Matal v. Tam*
  582 U.S. 218 (2017) ............................................................................ 19

iv

*Mech v. Sch. Bd. of Palm Beach Cnty., Fla.*
  806 F.3d 1070 (11th Cir. 2015) ........................................................... 15

*Nat'l Inst. of Family & Life Advocates v. Becerra*
  585 U.S. 755 (2018) ........................................................................... 16

*New Hope Family Services, Inc. v. Poole*
  966 F.3d 145 (2d Cir. 2020) ........................................................... 11, 22

*Otto v. City of Boca Raton, Florida*
  981 F.3d 854 (11th Cir. 2020) .................................................... 10, 23, 24

*Owen v. I.C. Sys., Inc.,*
  629 F.3d 1263 (11th Cir. 2011) ........................................................... 10

*Pleasant Grove City, Utah v. Summum*
  555 U.S. 460 (2009) ....................................................................... 16, 17

*Police Dept. of City of Chicago v. Mosley*
  408 U.S. 92 (1972) ............................................................................. 11

*Reed v. Town of Gilbert, Ariz.*
  576 U.S. 155 (2015) ....................................................................... 10, 11

*Sherbert v. Verner,*
  374 U.S. 398 (1963) ........................................................................... 12

*Shurtleff v. City of Boston, Massachusetts*
  596 U.S. 243 (2022) ....................................................................... 10, 11

*Shurtleff v. City of Boston, Massachusetts,*
  596 U.S. 243 (2022) ........................................................................... 10

*Trinity Lutheran Church of Columbia, Inc. v. Comer*
  582 U.S. 449 (2017) ........................................................................... 28

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*
  576 U.S. 200 (2015) ....................................................................... 19, 20

*Wollschlaeger v. Governor, Florida*
  848 F.3d 1293 (11th Cir. 2017) .................................................... 10, 23

**State Statutes**

§ 741.32, Florida Statutes ..................................................................... 2, 20

**State Regulations**

65H-2.017, Fla. Admin. Code R ...................................................... *passim*

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

This appeal is from a decision of the District Court granting summary judgment in favor of Secretary Shevaun Harris, in her official capacity as Secretary of the Florida Department of Children and Families (the "State"). The District Court had jurisdiction under 28 U.S.C. § 1331 since the action is based on the Constitution and laws of the United States. (Doc. 1). The District Court's judgment was entered on November 15, 2024. (Doc. 46). Appellant filed this appeal on December 13, 2024. (Doc. 48). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I.    Whether Dr. Nussbaumer's curriculum, used in his Batterer's Intervention program for nearly 30 years—which is solely created by him, communicated by him to patients at his personal office who voluntarily select him of a list of providers, and who compensate him directly for his services—constitutes government speech or his own.

II.    Whether Dr. Nussbaumer's exclusion from the State's certification as a Batterer's Intervention Provider for having a faith-based curriculum violates Dr. Nussbaumer's First Amendment right to Free Exercise of his religion.

1

## <u>STATEMENT OF THE CASE</u>[1]

Joseph Wm. Nussbaumer, Jr., PhD, brought suit against Secretary Shevaun Harris, in her official capacity as Secretary of the Florida Department of Children and Families asking the District Court to declare unconstitutional 65H-2.017, Fla. Admin. Code R. (hereinafter, the "Regulation"), which infringes on Dr. Nussbaumer's rights to Freedom of Speech and Free Exercise of religion protected by the First Amendment to the U.S. Constitution. Because the Regulation violates Plaintiff's constitutional rights, it should be declared unconstitutional and permanently enjoined.

### *The Legislative Text*

In 2022, the Florida Legislature adopted § 741.32, Florida Statutes, which required "the Department of Children and Families [to] *certify* and *monitor* batterers' intervention programs" according to a broad set of guidelines it adopted setting the general framework for a certified Batterers' Intervention Program ("BIP") and the necessary qualifications to be a certified BIP provider. § 741.32, Fla. Stat. (2022) (emphasis added). State then promulgated the Regulation implementing the statutory mandate. The Department adopted 65H-2.017, which provides:

---

[1] References to the record will be made by referring to the CM/ECF Docket Entry number, followed by the page or paragraph number where the information can be located (i.e. Doc. #, ¶ # or Doc. #, p. #).

(1) The program curriculum shall be based on a psychoeducational or cognitive behavioral therapy intervention model that recognizes domestic violence and dating violence as the result of one person in an intimate relationship systematically using tactics of coercion, emotional abuse and physical violence in order to assert power and control over the other. The curriculum shall incorporate the following elements/content:

(a) An educational approach that assigns responsibility for the violence solely to the batterer and provides a strategy for assisting the batterer in taking responsibility for the violence,

(b) Encourages the batterer to develop critical thinking skills that will allow the batterer to rethink their behavior and identify behavior choices other than violence,

(c) Addresses intimate partner violence as a learned behavior, not an impulse control issue,

(d) Domestic violence is not provoked or the result of substance abuse and recognizes substance abuse patterns in domestic violence,

(e) The batterer's ability to identify and articulate feelings,

(f) Communication skills and listening with empathy,

(g) Negotiation and conflict resolution skills,

(h) Addresses gender specific forms of violence and challenges stereotypical gender role expectations,

(i) Strategies for helping the batterer to develop and improve support systems,

(j) The effects of distorted thinking on emotions and behavior, and

(k) The effects of domestic violence on children.

(2) The program curriculum shall not include the following elements:

(a) Couples, marriage or family therapy, or any manner of victim participation;

(b) Anger management techniques that identify anger as the cause of domestic violence;

(c) Theories or techniques that identify poor impulse control as the primary cause of the domestic violence or identify psychopathology on the part of either party as a primary cause of domestic violence;

3

(d) Fair fighting techniques; or

(e) *Faith-based ideology associated with a particular religion or denomination.*

Fla. Admin. Code R. 65H-2.017 (emphasis added).

*First*, the Regulation **requires** certain speech. The Regulation requires

BIP providers to tell their patients:

1.  Domestic violence is the result of "one person in an intimate relationship systematically using tactics of coercion, emotional abuse and physical violence in order to assert power and control over the other.";
2.  Intimate partner violence is a learned behavior, not an impulse control issue;
3.  Domestic violence is not provoked or the result of substance abuse (yet, conflictingly, must also tell patients to "recognize[] substance abuse patterns in domestic violence";
4.  "Challenge" the patient's stereotypical gender role expectations.

Fla. Admin. Code R. 65H-2.017(1),(1)(c),(d),(h).

*Second*, the Regulation **prohibits** certain speech. During these BIP

sessions, the therapist **may not**:

1.  Identify anger as the cause of domestic violence;
2.  Identify poor impulse control as the primary cause of the domestic violence;
3.  Identify psychopathology on the part of either party as a primary cause of domestic violence;
4.  Use of fair fighting techniques to resolve disputes; nor
5.  Use faith-based ideology to counsel a patient.

Fla. Admin. Code R. 65H-2.017(2)(b),(c),(d),(e).

4

The Regulation on its face goes far beyond simply outlining how therapists should work with patients and standardizing the programming—it categorically outlaws certain speech by therapists and, at the same time, mandates certain speech by therapists. The Regulation's restrictions strike at the heart of Dr. Nussbaumer's First Amendment rights as it makes it unlawful to provide accurate, truthful information to patients regarding the underlying cause(s) of domestic violence and potential remedies, which would include faith-based suggestions. The State lacks any legitimate basis for its infringement on Dr. Nussbaumer's First Amendment rights.

### *Dr. Nussbaumer's Speech*

Dr. Nussbaumer has been approved as a BIP provider since the program was initiated by the Florida Legislature in 1995. *See* Affidavit of Dr. Nussbaumer at D.E. 81-1, ¶ 4. In fact, Dr. Nussbaumer was as non-lawyer member of the Florida Bar Mental Health Committee that prepared the recommendations to the Florida Legislature to create the BIP process. D.E. 81-1, ¶ 3. Over these many years, Dr. Nussbaumer has treated hundreds of patients as a BIP provider and been continuously credentialed by the state of Florida and continuously provided BIP services until its adoption of the Regulation. D.E. 81-1, ¶ 5.

As a part of his therapy with individual patients, Dr. Nussbaumer regularly treats each patient according to their individual needs. D.E. 81-1, ¶ 8. For instance, a patient with a substance abuse disorder may engage in domestic

violence behavior related to that substance abuse issue. D.E. 81-1, ¶ 8. That underlying issue (substance abuse) must be treated along with the domestic violence issue. D.E. 81-1, ¶ 8. Likewise, an individual with an underlying psychological disorder must be treated for that underlying issue along with the domestic violence issue in order to have successful treatment. D.E. 81-1, ¶ 8.

The Regulation seeks to change all that. In order to continue to operate as an approved BIP provider, Dr. Nussbaumer must self-censor his speech and agree not to speak the things The State's Regulation prohibits and must agree to speak the things the Regulation requires. D.E. 81-1, ¶¶ 10, 12. Dr. Nussbaumer is also told he must leave his faith at the office doorstep and he has been told he is specifically prohibited from using his faith background, experience, and training as a part of the curriculum. D.E. 81-1, ¶ 11.

### *The State's Evidence Supporting its Government Speech Claim*

The State's sole defense to Dr. Nussbaumer's claims is the government speech doctrine. In its view, Dr. Nussbaumer is simply a mouthpiece for the State. Initially, the State sought to limit the focus of this government speech inquiry solely on the evidence that *postdates* the creation of the Regulation. D.E. 45 at p. 3 ("The Regulation at issue was promulgated by DCF and published on September 4, 2022. The only relevant documents at issue would have been created on or after September 4, 2022."). Applying *Schurtleff*'s three-factored "government speech" test, the District Court correctly rejected that cabined

6

approach since State's past and current treatment of BIP certification applications (Dr. Nussbaumer's and others) are relevant to the analysis of the history and control factors. D.E. 72, p. 7.  Pre-2022, the State's evidence is sorely lacking.  Dr. Nussbaumer deposed Michael Terrance, the State's Corporate Representative, who testified as follows:

Q. Okay. Since when did Dr. Nussbaumer begin providing services as a BIP provider in the state of Florida?

A. I do not know the answer to that question. We do not know.

* * *

Q. From July of 2001, how long did DCF review and certify BIP programs?

A. From 2001 until the statutes were rescinded in 2012.

Q. During that time did Dr. Nussbaumer provide BIP services?

A. I believe he did. I don't know for a fact.

Q. Was he certified by DCF?

A. No, he was not.

Q. Did he ever -- did he submit an application during that period of time to be certified?

A. He did.

Q. And was his application denied?

A. It was never approved.

Q. Was it ever denied?

A. No denials.

Q. It just was never approved?

7

A. Never approved.

* * *

Q. From 2012 to 2022, does DCF have any knowledge of what Dr. Nussbaumer was doing as a BIP provider?

A. No.

Q. From the 1990s to 2001, does DCF have any information as to what Dr. Nussbaumer was doing as a BIP provider?

A. No.

D.E. 81-4, pp. 54:12—13; 55:17—56:9; 60:20:61:1.

The crux of the BIP structure is the curriculum used by the providers. This is the information that is communicated to the individuals that effects the change in their behavior (or at least that is the goal). Yet, the State's corporate representative conceded there is no State-created curriculum. D.E. 81-4, p. 28:13—24. Further, the State conceded the curriculum used in every BIP program is created by that individual provider *without* input from the state. *Id.* In other words, the State does not choose the words of the message conveyed, it just provides overarching guidelines for the message that must be conveyed.

Even considering the State's requested timeframe (September 2022-present), The State's discovery responses showed it has exercised *no* control over BIP curriculum. The request/response is as follows:

8. A copy of any correspondence sent to any other Batterers' Intervention provider rejecting the curriculum used by that provider since September 4, 2022 to present.

**Response**: None exist.

8

D.E. 81-3, No. 8.

The State had *no* documents showing it has ever rejected a curriculum (other than Dr. Nussbaumer's) from September 4, 2022 through February 9, 2024. *Id.* The State also conceded the only portion of time from 1995 to 2022 where the State was *potentially* communicating a message on its behalf was from 2007-2011. *See* Doc. 83 at p. 19 ("From 2007-2011 and now since 2022, there have been rules that govern all aspects of BIP . . . .").

### *District Court Proceedings*

Dr. Nussbaumer filed his Complaint in December 2022, and also filed a Motion for Preliminary Injunction. *See* D.E. 1, 5. The State filed a Motion to Dismiss (D.E. 9) and a Response to Dr. Nussbaumer's Motion for Preliminary Injunction (D.E. 19). The District Court held a hearing on the Motion for Preliminary Injunction, ultimately denying both the Motion to Dismiss and Motion for Preliminary Injunction. *See* D.E. 23, 24.

The parties engaged in discovery and both moved for summary judgment. *See* D.E. 82, 83. The parties also filed responses and replies to the motions for summary judgment. *See* D.E. 89, 90, 96, 97. The District Court entered its Order granting the State's Motion for Summary Judgment. *See* D.E. 102. And the Clerk entered the judgment as directed by the District Court. *See* D.E. 103.

This appeal timely followed. *See* D.E. 104.

## STANDARD OF REVIEW

This Court reviews the grant of summary judgment de novo. *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011).

## SUMMARY OF THE ARGUMENT

The central question in this case is whether Dr. Nussbaumer's speech to his patients is *his* speech or *government* speech. D.E. 24, at p.8—9. If it is government speech, his claims fail. *Id.*; *See also Shurtleff v. City of Boston, Massachusetts*, 596 U.S. 243, 252 (2022). If it is his speech, his claims will succeed. *See Otto v. City of Boca Raton, Florida*, 981 F.3d 854 (11th Cir. 2020); *see also*, *Wollschlaeger v. Governor, Florida*, 848 F.3d 1293 (11th Cir. 2017). As explained below, Dr. Nussbaumer's speech to his patients, in his office, during sessions paid for solely by his patients, using a curriculum he developed, and that he has been using for the better part of three decades is his private speech.

## ARGUMENT

### I.    DR. NUSSBAUMER'S SPEECH IS NOT GOVERNMENT SPEECH AND IS THUS PROTECTED BY THE FIRST AMENDMENT.

The First Amendment, which is applicable to the States through the Fourteenth Amendment, prohibits laws "abridging the freedom of speech." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015). A government entity "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Id.* (*citing Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92, 95

(1972) (internal quotations omitted). However, if the speech is deemed government speech, the First Amendment does not apply and the government may decline to express a particular viewpoint.

But this restriction is not absolved merely because the government "authorizes, approves, or licenses certain conduct[] . . . ." *New Hope Family Services, Inc. v. Poole*, 966 F.3d 145, 171 (2d Cir. 2020). Government licensing (or certification) alone generally does not transform speech into government speech. *Id.* The Supreme Court noted "if private speech could be passed off as government speech by simply affixing a governmental seal of approval, government could silence or muffle the expression of disfavored viewpoints." *Id.*

The central question this Court must answer is whether the government intends to transmit its own message, or whether the State is merely certifying Dr. Nussbaumer and other BIP providers to provide their own services and share their own views, within certain guidelines. *Shurtleff*, 596 U.S. at 252. The answer is the latter. To determine whether speech is government speech, the Supreme Court has articulated a three-factor test seeking to identify the history, endorsement, and control of the speech. *Shurtleff*, 596 U.S. at 252; see also *Cambridge Christian Sch., Inc. v. Florida High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1231 (11th Cir. 2019). Each of these factors weighs in favor of Dr. Nussbaumer.

11

**A. The State has the Burden of Persuasion in its Attempt to Restrict Dr. Nussbaumer's Speech.**

The Supreme Court has explained the two-step framework to follow in a First Amendment challenge. *Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407, 2421 (2022). First, "a plaintiff bears certain burdens to demonstrate an infringement of his rights under the Free Exercise and Free Speech Clauses." *Id.* The plaintiff must show there has been some restriction on his speech by government action. Second, "the focus then shifts to the defendant to show that its actions were nonetheless justified and tailored consistent with the demands of our case law." *Id.* (citing *Fulton v. Philadelphia*, 141 S.Ct. 1868, 1876–1877, 1881 (2021); *Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015); *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993); and *Sherbert v. Verner*, 374 U.S. 398, 403 (1963)).

Once a plaintiff presents evidence his speech is restricted by government action, the defendant bears the burden of showing the speech restrictions are justified and consistent with the decisions of the Supreme Court and this Court. While the District Court did not directly address in the summary judgment ruling which party bore the burden of persuasion, it seems apparent from the language used in the Order that the District Court required Dr. Nussbaumer to prove his speech was not government speech, rather than the other way around.

12

The State should have had the burden to prove Dr. Nussbaumer's speech is government speech. It cannot meet that burden.

Turning to the *Shurtleff* factors.

**B. The History of the BIP Certification Shows it is Not Government Speech.**

This first *Shurtleff* factor favors Dr. Nussbaumer. The District Court acknowledged there is a "murky history" regarding Dr. Nussbaumer's work as a BIP provider. D.E. 102 at pg. 12. The District Court found that this factor was "at most, mixed with regard to whether the State has historically sought to convey its message through BIP providers." *Id.*

This Court has described this factor as "whether the type of speech under scrutiny has traditionally communicated messages on behalf of the government." *Cambridge Christian School, Inc.*, 942 F.3d at 1232. At a 30,000-foot view, the question is whether speech between a therapist and their patients is a medium that has "traditionally communicated messages on behalf of the government." *Id.* Speech between a therapist and their patient(s), is simply not like the "history of flag flying" in *Shurtleff*; the history of monuments in *Summum*; the history of license plates in *Walker*; the history of parades in *Leake*; or the history of prayer at the opening of city council meetings in *Gundy*. In each of those cases, there was a long historical tradition of the medium being used by the government to convey a message on behalf of the government.

13

Similarly, Dr. Nussbaumer has explained that he sat on the Florida Bar Mental Health Committee of the Florida Bar Association to develop the BIP certification in the 1990s. D.E. 81-1, ¶ 4.; D.E. 81-2, p. 13. Dr. Nussbaumer explained he has been a BIP provider since the 1990s and has used used the same curriculum since he helped develop the certification. Again, from a 30,000 foot view, the speech between a provider and his patients is not "historically" the type of medium used by the State to communicate a message to its citizens.

But even on the more granular level, the State's arguments about the BIP structure fare not better. At best, the State argues that from April 26, 2007 through March 21, 2013, the State instituted guidelines interpreting the statutory requirements to determine what curriculum may or may not be use by a certified BIP. *See* 65H-2.005, *enacted* April 26, 2007, *repealed* March 21, 2013. In other words, all but for a small portion of time, the State was not using the BIP certification to communicate any message, and this is particularly apparent since the State did not even have knowledge of Dr. Nussbaumer's work during the time periods the State was not in charge of certifying BIP providers. D.E. 81-4, pp. 60:20:61:1. And even since it has retaken control over certification, it has not rejected any curriculum except Dr. Nussbaumer's. D.E. 81-3, No. 8.

On these facts, the State does not have a history of using the medium in question. Not only did the State have no evidence of using therapists generally to communicate a government message, it could not explain how for the majority

14

of the existence of the BIP certification, the State has not used the BIP certification to communicate any particular message. For a 12-year period (1995-2007), the State had no involvement whatsoever in Dr. Nussbaumer's speech to his patients. For about 6 years (2007-2013), it claims to have communicated a particular message, although it acknowledges Dr. Nussbaumer continued to offer his BIP services while the State had control from 2007-2013. And from 2013-2022 (and even through 2024), the State again did not use the BIP certification to communicate any particular message. For 21 of the 27 years the BIP certification has existed, the State has no evidence it used the BIP certification to communicate any particular message.

Trying to place the BIP certification into the same box as monuments, flags, license plates, and parades is trying to fit a square peg into a round hole. The history factor favors Dr. Nussbaumer.

### C. Speech between a Therapist and His Patients is Not the Kind of Speech Closely Identified with the Government.

While the closest call of the three, this factor, too, favors Dr. Nussbaumer. This factor seeks to determine whether an observer "reasonably believe the government has endorsed the message." *Cambridge Christian School, Inc.*, 942 F.3d at 1232–33 (quoting *Mech v. Sch. Bd. of Palm Beach Cnty., Fla.*, 806 F.3d 1070, 1076 (11th Cir. 2015). It is well established that merely because a state licenses (or certifies) a program or profession that licensure does not transform

the speech into government speech. *See Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755 (2018) (holding unconstitutional a restriction on pregnancy center's speech using a licensing requirement); *New Hope Family Services, Inc. v. Poole*, 966 F.3d 145, 171 (2d Cir. 2020) (government licensing (or certification) alone generally does not transform private speech into government speech).

But here, there is a nuance and one the the State relies on heavily. Though the statute states that the BIP certification is for the justice system to use, individuals may also voluntarily enroll in a BIP for a number of reasons (for use in divorce proceedings, child custody battles, etc.). Patients may be referred by attorneys or voluntarily enroll. D.E. 81-2, pp.9–10. Patients do not *only* decide to attend a BIP at the command of a court order. Of course, patients who voluntarily enroll would not "closely identif[y]" the speech with the government. *Cambridge Christian School, Inc.*, 942 F.3d at 1234 (quoting *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 472 (2009)). Florida courts have recognized this as well. *J.C. v. Dep't of Agric. & Consumer Services, Div. of Licensing*, 389 So. 3d 744, 746 (Fla. 1st DCA 2024) (recognizing that an individual *voluntarily* attended "the batterers' intervention program as established by section 741.281, Florida Statutes" even though he was not convicted of domestic violence and therefore not ordered by a court to attend the BIP).

Even for patients who are court ordered to attend a BIP, it does not automatically follow that the speech would be "closely identified in the public

mind with the government" *Id.* If that were true, other programs that may be court ordered, would run the same risk as posed by the BIP certification. For example, a court may order a person to attend a drug or alcohol counseling. That individual may satisfy the requirement by attending Alcoholics Anonymous (AA). AA is a private faith-based organization, but no one would seriously contend the speech of an AA sponsor is government speech. Likewise, here, every BIP is run through private providers with varying curriculum not created in any part by the State (as discussed below).

The District Court focused on the court-ordered BIP services, but that overlooks the fact that an uncertified BIP provider will likely face an uphill climb obtaining private clients. D.E. 102 at pg. 13. Likewise, the District Court's focus on the court-ordered BIP services ignores the fact that the individuals have freedom to choose whichever BIP provider they wish to work with. Much like court ordered mediation often allows the parties to choose their own mediator (provided the individual has the appropriate license) so does the BIP referral allow the parties to choose their own provider (provided the individual has the appropriate license).

This is buttressed by the fact that the individual BIP patient pays for the therapy out of their own pocket. The BIP patient has *carte blanche* to choose *any* certified BIP provider he or she chooses. And, since the choice of the provider

17

rests on the individual alone, they are free to change providers if they do not like the services (the speech) they are receiving.

And that makes sense in this context. Dr. Nussbaumer's patients choose Dr. Nussbaumer. While they must complete the required course with some provider, they have free reign to choose any certified BIP provider. Once they choose, the relationship becomes akin to the patient-therapist relationship that has long been recognized to be a private relationship between the doctor and patient. *See Jaffee v. Redmond*, 518 U.S. 1, 10 (1996) (explaining the psychotherapist-patient privilege). While certain privacy protections are waived by BIP participants, it does not change the historical backdrop that patients participating in therapy (individual or group) are not likely to subscribe the messages they hear to the government, as opposed to the individual provider they are meeting with.

With that amount of self-determination, it belies common sense to suggest the individual would "closely identif[y]" Dr. Nussbaumer's speech with the government. Nor would the public at large believe anything different. Just as the public would not believe the messages conveyed in an AA meeting are government speech, the public would equally not believe the speech of a certified BIP provider is government speech. No government official is present or runs BIP sessions. The State is merely certifying private individuals to convey a

message the State has determined meets minimum requirements. That kind of speech is private speech.

### D. The Government has Never Exercised Control over the Messages Conveyed.

This factor heavily favors Dr. Nussbaumer. The hallmark of control is whether the "relevant government unit maintains *direct* control over the messages conveyed." *Cambridge*, 942 F. 3d at 1234-35 (quoting *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 213 (2015)) (emphasis added).

In *Walker*, the Supreme Court determined the state-issued license plates were government speech since the government expressly reserved "final approval authority" over license plate designs and could reject any that was deemed "inconsistent" with how the state presented itself. *Walker*, 576 U.S. 200. On the other hand, in *Matal*, the Supreme Court determined that government approval of federal trademarks was not government speech even though the government had the ability to reject a trademark if it did not meet certain standards. *Matal v. Tam*, 582 U.S. 218 (2017). Unlike the unlimited discretion in *Walker*, the government in *Matal* did not possess *carte blanche* ability to deny a trademark; rather, it just had to determine whether the applied-for-trademark satisfied the relevant guidelines.

19

With those goal posts in mind, turning to the facts of this case. The level of discretion BIP providers have in crafting their own curriculum makes this case much more like *Matal* than *Walker*. The statute merely enables the State to *certify* and monitor BIP providers. § 741.32, Fla. Stat. Absent from this statutory scheme is any suggestion the State is *employing* BIP providers. In essence, this statute acts as a licensing scheme to approve already licensed therapists, or others who meet the BIP assessor/facilitator requirements, as a certified BIP provider. The State does not exercise any control over the BIP curriculum other than determining it meets the minimum requirements. The State even claims it is agnostic to the actual text of the curriculum (the speech) used by Dr. Nussbaumer and does not provide any portion of the curriculum. D.E. 81-4, p. 28:13—24. It does not even have a "standard" curriculum; the only guidelines it can point to is the Regulation itself. D.E. 81-4, p. 28:13—31:7. That concession is quite telling. There is no model curriculum. There is not standardized curriculum that each provider must use. If the State *truly* wanted to simply "standardize" the curriculum used by BIP providers across the state, it would simply create its own curriculum for providers to use. In other words, it would create government speech and require speakers to convey that message. That level of control is noticeably absent here.

The State does not possess the same level of "final approval authority" like Texas did in *Walker* to indicate it has a sufficient level of control over Dr.

Nussbaumer's speech to make it government speech. The State attempts to have its cake and eat it too by stating it does not establish curriculum, it only approves it based on the minimum standards in 65H-2.017; yet, somehow, every individual curriculum conveyed by the private providers *is* the government's message. The State cannot have it both ways. If the State simply determines whether the minimum requirements have been satisfied and will then approve "many curriculums," how can it be government speech? There is no single unified message from the government. The State does not affirmatively create any curriculum providers must use; rather, it simply has created broad, general guidelines for a provider to create its own curriculum to use within their own private classes. Additionally, the government cannot require a person to attend a BIP from a specific provider. Dr. Nussbaumer merely applies to the state of Florida to be listed as a "certified" BIP provider and be one of the options an individual may choose. As mentioned before, individuals ordered to attend a BIP may choose for themselves which BIP to attend. If the State is not creating the curriculum, nor conveying the curriculum itself, nor even choosing which provider the individual must see, it strains reason that the speech of the BIP providers is government speech.

Consider the parent-coordinator role in divorce proceedings. Trial courts routinely appoint a therapist to assist with time-sharing recommendations and better understand the needs of the children, etc. *Estape v. Seidman*, 269 So. 3d

565, 569 (Fla. 4th DCA 2019). Simply because participation with the therapist is court-ordered does not turn the therapist's speech into government speech. If that were true, the therapist would be a government speaker (or even a judicial officer) and would be entitled to immunity for the actions taken in that court-ordered role. But that very argument has been rejected. *Id.* (even though the therapist was court-appointed the court reversed summary judgment on the immunity defense since "the statute clearly allows litigation and does not provide for absolute immunity for the psychologist.").

Moreover, Dr. Nussbaumer is not a government employee or contractor, receives no government funding, and is merely "on the list" of potential providers a patient may choose from. Plaintiff's speech is analogous to the speech the Second Circuit addressed in *Poole* when it determined the speech of a provider of adoption services that wanted to be "on the list" of approved providers was not "government speech." *New Hope Family Services, Inc. v. Poole*, 966 F.3d 145, 172 (2d Cir. 2020). In *Poole*, despite the fact the provider did not receive any government funding, the state argued its speech was "government speech" since it was a "state-authorized adoption agency" that connected potential parents with children in need of adoption. *Id.* The Second Circuit rejected the idea that the government's licensing of the adoption program converted the provider's speech into government speech.

Being a "state-authorized adoption agency" was insufficient to convert the provider's speech into government speech. The same is true here. Adoption services are a government monopoly. There is no free-wheeling opportunity to adopt and transfer children from one family to another outside the government's auspices. Yet, even in that closely-regulated arena, an area that most would find closely-related to the government since it always involves input from the government (a court order adjudicating the adoption at the very least), the adoption provider speaks for itself and not the government.

This Court has struck down regulations infringing free speech rights of therapists like Dr. Nussbaumer licensed through state statutory schemes. See *Otto*, 981 F.3d 854; *see also*, *Wollschlaeger*, 848 F.3d 1293. In *Otto*, this Court rejected a city's attempt to ban speech by therapists under a city's authority to protect minor children as well as regulate professional conduct. *Otto*, 981 F.3d at 861. This Court declared unconstitutional a local ordinance prohibiting "the practice of seeking to change an individual's sexual orientation or gender identity." *Id.* at 859. The regulations prohibited licensed therapists from providing specific forms of treatment. *Id.* The ordinance prohibited specific treatment methods (.e.g., speech)—requiring therapists to self-censor their speech. *Id.* This Court determined those requirements violated the therapists' right to Free Speech since the regulation of a professional practice is not a license to prohibit disfavored speech, nor does it magically convert the speech into

23

conduct. "If speaking to clients is not speech, the wold is truly upside down." *Otto*, 981 F.3d at 866.

By mandating what Dr. Nussbaumer must say, and what he must refrain from saying, the State infringes upon Dr. Nussbaumer's First Amendment right to engage in speech therapy because of the content of his speech. This is precisely what this Court found odious to the First Amendment in *Otto*. The State does not exercise any control over the message conveyed.

In sum, all three factors lean in favor of determining Dr. Nussbaumer's speech is private, not government, speech. As a result, *Otto* and *Wollschlaeger* control the outcome in this case. The Regulation impermissibly restricts Dr. Nussbaumer's Freedom of Speech protected by the First Amendment. This Court should declare the Regulation violates Dr. Nussbaumer's Freedom of Speech and permanently enjoin its application by the State against Dr. Nussbaumer.

## II. THE REGULATION IS A VIOLATION OF DR. NUSSBAUMER'S FIRST AMENDMENT RIGHT TO FREE EXERCISE OF RELIGION.

The Free Exercise Clause of the United States Constitution is implicated if "the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 532 (1993). Put another way, the government may not treat religious entities worse than non-religious entities. *See Fulton v. City of Philadelphia, Pennsylvania*, 593 U.S. 522,

533 (2021) ("Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature.") (citing *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Com'n*, 584 U.S. 617 (2018).  This is what the State has done here.

"[A] plaintiff bears certain burdens to demonstrate an infringement of his rights under the Free Exercise and Free Speech Clauses," and if shown, the burden shifts to the defendant to demonstrate "its actions were . . . justified and tailored consistent with" Supreme Court precedent. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524 (2022) (citing *Fulton*, 593 U.S. at 541). Like the free speech analysis, "[a] government policy can survive strict scrutiny only if it advances 'interests of the highest order' and is narrowly tailored to achieve those interests." *Carson as next friend of O. C. v. Makin*, 142 S.Ct. 1987, 1996 (2022) (quoting *Church of Lukumi Babalu Aye, Inc.*, 508 U.S. at 546).

The State has merely established a certification scheme for BIP providers. But to be certified, the State has explicitly told Dr. Nussbaumer he must completely abstain from any mention or affiliation with "faith-based ideology associated with a particular religion or denomination." D.E. 81-1, ¶ 11; 65H-2.017. The State's Corporate Representative testified:

> Q. DCF Bates stamp 183. And in that email GFC Counseling told DCF that it changed the wording of one of its policies to include the word "nondenominational"; correct?
>
> A. Correct.

Q. And -- but I think we just talked a minute ago that 65H forbids faith based ideology associated with any religion or denomination; correct?

A. The fact that you stated in this email that they were going to put the word "nondenominational" -- they still had particular religious wording saturating all of their forms. And they had not provided any nondenominational evidence of the changes to their paperwork.

\* \* \*

Q. So somebody could say that they are a Christian and nondenominational, but that still means that their faith is associated with a particular religion; correct?

A. I would agree with that.

Q. So regardless of whether GFC said that their faith based ideology was nondenominational, their faith based ideology was still associated with the Christian religion. Therefore, it still -- according to DCF -- violated 65H; correct?

A. I never told them that. But I would agree with that.

Q. Okay. And you said DCF never told them that. DCF told them that their program violated the faith-based ideology component of Rule 65H; correct?

A. I did tell them that. Yes, that's correct; we did say that.

D.E. 81-4, pp. 40–41.

Under the Regulation, absolutely no affiliation with any religion, even if "nondenominational," is permitted. Accordingly, secular providers are permitted to participate in BIP programs, and *any* religiously affiliated providers are not. This is quintessential disparate treatment and thus violates the "minimum requirement[s] of neutrality" because it singles out religious entities. *Church of Lukumi Babalu Aye, Inc.*, 508 U.S. at 533.

26

In *Fulton*, the Supreme Court struck down a city ordinance that prohibited a faith-affiliated adoption agency from accepting same-sex applicants based on a violation of the Free Exercise Clause. 593 U.S. at 542–43. The city stopped referring children to the agency and would only renew the agency's contract if it agreed to certify same-sex couples. *Id.* at 526–27. It did so even though the city had contracted with the agency for over 50 years while holding its beliefs. *Id.* at 530. The Court held that even though the adoption agency was licensed by the state, local city government could not force the agency from choosing between its mission or complying with the ordinance in violation of its sincerely held beliefs.

Here, Dr. Nussbaumer was previously certified and engaged in the BIP program with the State knowing of his faith-based curriculum. In fact, Dr. Nussbaumer's entire practice is as a Christian Counselor. D.E. 81-1, ¶ 2. Dr. Nussbaumer is licensed by FACCT (the Federal Association of Christian Counselors & Therapists, Inc.). And Dr. Nussbaumer explicitly informs his patients that his therapy practice is a "non-profit, faith-based organization whose treatment is always consistent with scriptural principles. The services that we offer are Biblically-based, although GFC counselors do work with people of all beliefs and varying backgrounds."[2] The State has demanded Dr. Nussbaumer scrub all references to faith from his program (regardless of

---

[2] Groveland Family & Crisis Counseling, *GFC Home*, available online at https://www.gfccounseling.com, last accessed February 25, 2025.

27

affiliation with any particular denomination) in order to be certified as a BIP provider.

The Supreme Court has made abundantly clear that a government policy that mandates as a condition of participation the scrubbing of all references to religion violates the Free Exercise Clause of the First Amendment. *Carson as next friend of O. C.*, 596 U.S. 767; *Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246, 2260 (2020); *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, —— (2017).

Because that is what the State has done here, this Court should find that the regulation violates Dr. Nussbaumer's right to Free Exercise. Even if this Court rejects Dr. Nussbaumer's Free Speech claims above, this Court should declare that the Regulation (specifically, 65H-2.017(e)) violates Dr. Nussbaumer's First Amendment rights and permanently enjoin the application of the Regulation (specifically, 65H-2.017(e)) against Dr. Nussbaumer.

## <u>CONCLUSION</u>

The Regulation violates Dr. Nussbaumer's rights to Freedom of Speech and Free Exercise of Religion under the First Amendment. This Court should reverse the District Court's Order and remand for entry of summary judgment in favor of Dr. Nussbaumer declaring the Regulation violates Dr. Nussbaumer's

First Amendment rights and permanently enjoining the State from enforcing the

Regulation against Dr. Nussbaumer.

DATED:  February 26, 2025

Respectfully submitted,

*/s/ Jeremy D. Bailie*
Jeremy D. Bailie (FBN 118558)
**Weber, Crabb & Wein, P.A.**
5453 Central Avenue
St. Petersburg, FL 33710
Jeremy.Bailie@webercrabb.com
Secondary:
honey.rechtin@webercrabb.com
natalie.deacon@webercrabb.com
Telephone: (727) 828-9919
Facsimile: (727) 828-9924
*Attorneys for Dr. Nussbaumer*

## <u>CERTIFICATE OF COMPLIANCE</u>

I HEREBY CERTIFY that:

1.    This document complies with the word limit of FRAP

32(a)(7)(B)(i) because this brief contains 6542 words, excluding the parts of

the brief exempted by FRAP 32(f).

2.    This document complies with the typeface requirements of

FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

 */s/ Jeremy D. Bailie*
Jeremy D. Bailie
Attorney for Appellant
Dated: February 26, 2025

29

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on February 26, 2025, in compliance with Fed. R. App. P. 25(b), the foregoing was filed electronically using the CM/ECF system for the U.S. Court of Appeals for the Eleventh Circuit, which will automatically send an email notification to the following counsel of record:

> Martha Hurtado, Esq.
> Sr. Asst. Attorney General
> Office of the Attorney General
> 110 S.E. 6th Street, 10th Floor
> Ft. Lauderdale, FL 33301
> Martha.Hurtado@myfloridalegal.com
> *Attorneys for Defendant/Appellee*

> */s/ Jeremy D. Bailie*
> Attorney