IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO.  2 4 - 1 4 0 8 2 - G

**JOSEPH NUSSBAUMER, JR.,**

Appellant,

vs.

**SECRETARY, FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES,**

Appellee.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
DOCKET NO. 4:22-CV-00448-MW-MAF

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**APPELLEE SECRETARY'S ANSWER BRIEF**

JAMES UTHMEIER
Attorney General

CHRISTOPHER SUTTER (FBN 0422215)
Assistant Attorney General
Office of the Attorney General
South Florida Civil Litigation Bureau
110 SE 6th Street, 10th Floor
Ft. Lauderdale, Florida 33301-5000
Tel. (954) 712-4600
Christopher.Sutter@myfloridalegal.com

**CERTIFICATE OF INTERESTED PERSONS**
**AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to 11th Circuit Rule 26.1, Appellee SECRETARY, FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES (hereinafter the "Appellee"), by and through the undersigned counsel, files this Certificate of Interested Persons and Corporate Disclosure Statement. The following persons and/or parties have an interest in the outcome of this case:

Bailie, Jeremy – counsel for Appellant

Fitzpatrick, Hon. Martin A. – U.S. Magistrate Judge

Florida Department of Children and Families [DCF]

Florida Office of the Attorney General

Hurtado, Martha – Sr. Asst. Attorney General, trial counsel - Harris

Harris, Shevaun – Secretary of DCR – Defendant/Appellee

Kenny, Joseph – counsel for Appellant

Nussbaumer, Joseph Jr. – Plaintiff/Appellant

Sutter, Christopher – Sr. Asst. Attorney General, appellate counsel – Harris

Walker, Hon. Mark – U.S. District Court Judge

Weber, Crabb & Wein, PA – firm representing Appellant

Appellee, through undersigned counsel, hereby certifies that, to her knowledge, there are no known publicly traded companies or corporations that have an interest in the outcome of the case or appeal.

s/ Christopher Sutter
Christopher Sutter
Senior Assistant Attorney General

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

In accordance with Fed. R. App. P. 34, Appellee does not request oral argument.  The issues are adequately set forth in the record and in the briefs and the Court's decision-making process would not be significantly aided by oral argument.

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS..................................C-1

STATEMENT REGARDING ORAL ARGUMENT............................. i

TABLE OF CONTENTS...................................................... ii

TABLE OF AUTHORITIES................................................iv

STATEMENT OF JURISDICTION ......................................1

STATEMENT OF THE ISSUES.........................................1

INTRODUCTION .........................................................1

RE-STATEMENT OF THE CASE.......................................4

  Background............................................................4

  Course of Proceedings and Disposition ...............................7

  Standard of Review ...................................................7

SUMMARY OF ARGUMENT ...........................................7

ARGUMENT .................................................................8

I. Appellant has failed to establish that the curriculum of the court-ordered
Batterer's Intervention Program is private speech. ........................8

  A.  History of court-ordered BIP shows that it is clearly government speech . 11
  B.  Court-ordered participants would reasonably believe that the
government has endorsed the message of BIP ....................................14
  C.  The claim that the government has never exercised control over
the message of court-ordered BIP fails.................................17

II. The Regulation is not a violation of Appellant's First Amendment
Right to Free Exercise of Religion because the speech he wishes to

exercise is not private speech ............................................................. 21

CONCLUSION .................................................................................... 24

CERTIFICATE OF COMPLIANCE .................................................... 25

CERTIFICATE OF SERVICE ............................................................. 26

USCA11 Case: 24-14082    Document: 18    Date Filed: 04/28/2025    Page: 7 of 34


# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cambridge Christian Sch., Inc. v. Florida High Sch. Athletic Ass'n, Inc.,* 115 F.4th 1266 (11th Circ. 2024) ............................................................................... 3, 7, 24

*Cambridge Christian Sch., Inc. v. Florida High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215 (11th Cir. 2019) ............................................................... 3, 8, 9, 13, 14, 15

*Gundy v. City of Jacksonville Florida*, 50 F.4th 60 (11th Cir. 2022) ........... 9, 16, 21

*Leake v. Drinkard*, 14 F.4th 1242 (11th Cir. 2021) .................................................9

*New Hope Family Services, Inc., v. Poole*, 966 F.3d 145 (2d Cir. 2020) ...............19

*Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) ............................. 14, 16, 23

*Shurtleff v. City of Boston, Massachusetts*, 596 U.S. 243 (2022) ........................3, 8

*Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200 (2015).. 3, 7, 14


Statutes

28 U.S.C. § 1291 ......................................................................................................1

Fla. Stat. §741.32 ......................................................................................... 2, 10, 15

§ 741.2811, Florida Statutes ..................................................................................16

§ 741.325, Florida Statutes (2021) .........................................................................10

§§ 741.281, 741.32, 741.325, and 741.327, Florida Statutes ................. 9, 15, 20, 24

iv

Rules

Fed. R. App. P. 32(a)(6)........................................................................25

Fed. R. App. P. 32(a)(7)(B) ...................................................................25

Fed. R. App. P. 34 ................................................................................... i

Fed. R. Civ. P. 32(a)(5)........................................................................25

Regulations

Fla. Admin. Code 65H-2.017........................................................ 6, 11, 24

rule 65H-2.005, Fla. Admin. Code ......................................................12

## STATEMENT OF JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1291 as an appeal of a final decision of the Southern District Court of Florida.

## STATEMENT OF THE ISSUES

The Statement of the Issues, as presented by the Appellant:

I. Whether Dr. Nussbaumer's curriculum, used in his Batterer's Intervention program for nearly 30 years, which is solely created by him, communicated by him to patients at his personal office who voluntarily select him of a list of providers, and who compensate him directly for his services—constitutes government speech or his own.

II. Whether Dr. Nussbaumer's exclusion from the State's certification as a Batterer's Intervention Provider for having a faith-based curriculum violates Dr. Nussbaumer's First Amendment right to Free Exercise of his religion.

## INTRODUCTION

This case concerns the curricula of the State of Florida's Batterers Intervention Programs ("BIP"). The Appellant has applied to be a BIP provider and has submitted for State certification a faith-based curriculum that he will offer to individuals in a therapeutic setting. The Florida Legislature enacted a law, finding

1

" that there should be standardized programming available to the justice system to protect victims and their children and to hold the perpetrators of domestic violence accountable for their acts." Fla. Stat. §741.32 It also required that "to ensure statewide consistency in such programming, the Department of Children and Families ("DCF" or "Department") shall certify and monitor batterers' intervention programs to be used by the justice system." Id.  The Department enacted rules establishing criteria for the BIP programs that are to be offered to those subject to court-ordered services.

The Appellant's program does not meet the criteria established by the Department for court-ordered BIP services.  The Appellant claimed that these rules violated his First Amendment rights to Freedom of Speech and Free Exercise of religion. (IB 1)[1] He claims that the rule "outlaws certain speech by therapists and, at the same time, mandates certain speech by therapists." (IB 5)

The criteria set forth by the Florida Legislature and DCF is government speech.  For those providers that wish to be certified by the Department to offer court-ordered BIP services, those guidelines need to be followed.  Again, the purpose is to provide consistent services across the state.  The Department did not create the curricula for the various programs, but did establish criteria at the base of

---

[1] Appellant's Initial brief will be referred to as "IB" followed by a page number.

2

the programs such as using the power and control model and group sessions.  The Department offered specialists to assist providers in adapting their programs to the established criteria.  Those programs that did not follow the criteria could still privately offer their programs, they just would not be certified by DCF.  Appellant did not wish to adapt his curriculum to the criteria set by the state agency and he was not certified.

There is nothing that impedes the Appellant's speech to his patients, using the curriculum he developed and has used for many years.  However, he would not be certified by DCF to provide court-ordered BIP services.

To determine whether speech is government speech, the Supreme Court has articulated a three-factor test seeking to identify the history, endorsement, and control of the speech. *Shurtleff v. City of Boston, Massachusetts*, 596 U.S. 243, 252 (2022); see also *Cambridge Christian Sch., Inc. v. Florida High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1231 (11th Cir. 2019).  The Department believes, and the District Court found, that the criteria established by this state agency in the provision of services was government speech.  "When the government speaks for itself, 'it is not barred by the Free Speech Clause from determining the content of what it says.' " *Cambridge Christian Sch.*, 115 F.4th at 1288 (quoting *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015)).  Additionally, "the government is not liable for suppressing the free exercise of religion when it restrains

3

only its own expression." *Cambridge Christian Sch.*, 115 F.4th at 1295 (citations and quotation marks omitted).  As this was government speech, DCF did not violate the Free Speech or the Free Exercise Clause of the First Amendment.

The Appellee respectfully requests that this Court affirm the ruling of the District Court.


## RE-STATEMENT OF THE CASE

### I. Background

In 1995, the Florida Legislature adopted certain requirements for batterers' intervention programs and established an Office for Certification and Monitoring of Batterers' Intervention Programs in the Department of Corrections, whose purpose was to certify and monitor batterers' intervention programs and personnel who provide direct services to persons attending such programs. *See* Ch. 95-195, §§ 16–17, Laws of Fla. (1995). According to the Legislature, "[t]he purpose of certification of programs is to uniformly and systematically standardize programs to hold those who perpetrate acts of domestic violence responsible for those acts and to ensure safety for victims of domestic violence." *Id*. § 16. (ECF No. 102 p.4)

Over the years, authority for certification and monitoring has moved from the Florida Department of Corrections to the Department of Children and Families. Between 1997 and 2012, certification was statutorily required. But state certification

of BIP curriculum has not always been mandated. In 2012, the Florida Legislature repealed the certification and monitoring program. In 2022, however, the Florida Legislature re-established the program and mandated certification to participate as a BIP provider. (Id.)

In 2007, during a period when Florida law required certification, the Department of Children and Families promulgated Rule 65H-2.005 setting out BIP curriculum requirements and prohibitions. *See* ECF No. 83-4. These curricular requirements and prohibitions are essentially identical to the challenged regulation at issue in this case. *Compare* ECF No. 83-4 and ECF No. 83-1. Importantly, both the 2007 regulation and the 2022 regulation prohibit "faith-based ideology associated with a particular religion or denomination." *Id*. (ECF No. 102 p.5)

The Department of Children and Families ("DCF") set the following criteria for providers to be certified to provide court-ordered BIP services:

**65H-2.017 Program Curriculum.**
(1) The program curriculum shall be based on a psychoeducational or cognitive behavioral therapy intervention model that recognizes domestic violence and dating violence as the result of one person in an intimate relationship systematically using tactics of coercion, emotional abuse and physical violence in order to assert power and control over the other. The curriculum shall incorporate the following elements/content:
(a) An educational approach that assigns responsibility for the violence solely to the batterer and provides a strategy for assisting the batterer in taking responsibility for the violence,
(b) Encourages the batterer to develop critical thinking skills that will allow the batterer to rethink their behavior and identify behavior choices other than violence,
(c) Addresses intimate partner violence as a learned behavior, not an impulse

5

control issue,

(d) Domestic violence is not provoked or the result of substance abuse and recognizes substance abuse patterns in domestic violence,

(e) The batterer's ability to identify and articulate feelings,

(f) Communication skills and listening with empathy,

(g) Negotiation and conflict resolution skills,

(h) Addresses gender specific forms of violence and challenges stereotypical gender role expectations,

(i) Strategies for helping the batterer to develop and improve support systems,

(j) The effects of distorted thinking on emotions and behavior, and

(k) The effects of domestic violence on children.

(2) The program curriculum shall not include the following elements:

(a) Couples, marriage or family therapy, or any manner of victim participation;

(b) Anger management techniques that identify anger as the cause of domestic violence;

(c) Theories or techniques that identify poor impulse control as the primary cause of the domestic violence or identify psychopathology on the part of either party as a primary cause of domestic violence;

(d) Fair fighting techniques; or

(e) Faith-based ideology associated with a particular religion or denomination.

(3) The program curriculum shall be submitted with the initial certification application and in annual monitoring to the ODV which will review for compliance with rule and statute.

Fla. Admin. Code 65H-2.017

Plaintiff is a licensed clinical Christian psychologist and has been providing services to patients in Florida for over thirty years. ECF No. 81-1 ¶ 2. Since the Legislature created the batterers' intervention program in 1995, he has "treated hundreds of patients as a BIP provider[.]" *Id.* ¶ 5. Now, however, "DCF has told [Plaintiff] they will not process [his certification] application because [his] BIP curriculum contains patient-specific counseling for anger management, substance abuse, etc. and it has faith-based components," contrary to the curriculum

requirements set out in the challenged regulation. *Id*. ¶ 7. (ECF No. 102 p.5)

## II. Course of the Proceedings and Disposition

Appellee accepts the Course of Proceedings and Disposition as presented by the Appellant.

## III.    Standard of Review

The Appellee accepts the standard of review provided by the Appellant.

## <u>SUMMARY OF ARGUMENT</u>

"When the government speaks for itself, 'it is not barred by the Free Speech Clause from determining the content of what it says.' " *Cambridge Christian Sch.*, 115 F.4th at 1288 (quoting *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015)).    Additionally, "the government is not liable for suppressing the free exercise of religion when it restrains only its own expression." *Cambridge Christian Sch.*, 115 F.4th at 1295 (citations and quotation marks omitted).

The curriculum for court-ordered BIP is controlled by the State and is government speech.  As the Appellant disagreed with the certification criteria and wished to use his own curriculum, he was not certified by DCF.  The fact

7

that his curriculum was faith-based does not mean the free exercise of his religion was impeded. His curriculum did not meet the criteria established by the Department in order for consistent services to be available when ordered by the judiciary. The Appellant could still provide his services to private clients.

The District Court properly found that there was government speech and ruled for judgment in favor of DCF. This Court must affirm that decision.

## ARGUMENT

Appellant cannot establish the necessary elements of his claim. With all reasonable doubts regarding facts resolved in favor of the non-moving Defendant, all three factors outlined in *Shurtleff v. City of Boston, Massachusetts*, 596 U.S. 243 (2022) favor the Appellee. Appellee respectfully requests that the Court affirm the decision of the District Court.

## I.    Appellant has failed to establish that the curriculum of the court-ordered Batterer's Intervention Program is private speech

There are three factors that the Court has used to differentiate government speech from private speech: history, endorsement, and control. *Cambridge Christian School, Inc. v. Florida High School Athletic Association*, 942 F.3d 1215,

1230 (11th Cir. 2019). All three factors are not necessary to support a finding of government speech. *Leake v. Drinkard*, 14 F.4th 1242, 1248 (11th Cir. 2021). But a finding that all three factors evidence government speech "will almost always result in a finding that the speech is that of the government." *Gundy v. City of Jacksonville Florida*, 50 F.4th 60, 77 (11th Cir. 2022).  In this case, all three factors evidence the speech at issue constitutes government speech. The history factor is evaluated by inquiring whether the speech in question has traditionally communicated messages on behalf of the government. *Cambridge*, 942 F.3d at 1232.   Endorsement evaluates whether observers reasonably believe the government has endorsed the message.  Control evaluates whether the relevant government unit 'maintains direct control over the messages conveyed' through the speech in question." *Id*. at 1248.

Appellant conflates his services where he provides Batterer's Intervention, substance abuse treatment and individual counseling to voluntary clients with the government's court-ordered BIP, established pursuant to §§ 741.281, 741.32, 741.325, and 741.327, Florida Statutes. These statutes require courts to sentence persons found guilty of domestic violence to BIP programs certified and monitored by DCF.  Appellant attempts to skirt the issue by stating he is "credentialed" or has been providing BIP for thirty years. (ECF No. 81-1, ¶ 5) However, Appellant cannot unequivocally state that he has been certified by DCF as a BIP provider for court-

ordered participants.   For example, when asked directly if he was a certified provider by DCF, his answer is, "I guess so."  See ECF No. 83-19, 18:4-11.

In his own affidavit, Appellant does not state he was ever certified by DCF, and does not use the word "certified". (ECF No. 81-1) The best he can state is he was "continuously credentialed by the State of Florida." (*Id*., ¶ 5). When asked for proof of certification, Plaintiff could not provide.  *See ECF No. 89-2, Email dated July 17, 2023, from Defendant's counsel to Plaintiff's counsel.* Plaintiff does not use the word "certified" in his Affidavit because he never was.

The Appellant went on to argue that the state is "merely certifying" private individuals to convey the State's message. (ECF No. 82, p.20) The evidence against this statement is overwhelming.  Appellant is ignoring the very language of the statutes and regulations that have established the court-ordered BIP program and certification and monitoring program.  Beginning with § 741.32, Florida Statutes (2021), which expresses the Legislature's intent to curb domestic violence in order to protect victims and children who witness the perpetration of this violence.  It continues to state:

> The Legislature finds that there should be standardized programming available to the justice system to protect victims and their children and to hold the perpetrators of domestic violence accountable for their acts. To ensure statewide consistency in such programming, the Department of Children and Families shall certify and monitor batterers' intervention programs to be used by the justice system.

§ 741.32, Florida Statutes

Further, § 741.325, Florida Statutes (2021) lays out the requirements for batterers' intervention programs, requiring a specific purpose (victim and child safety), accountability of the perpetrator, length of the program, content that address the tactics of power and control, and must be funded by the court-ordered participants themselves.

These statutes give meaning and authority to the Regulation that governs curriculum.   These statutes have also been in place for 29 years.

Appellant also ignored the actions taken by the state to ensure that the message transmitted to the court-ordered participants is the government's own message and not that of the provider.  By promulgating rules such as 65H-2.017, Fla. Admin. Code, hiring Certifying and Monitoring Specialists, and employing these Specialists to oversee and assist in the application process, the government is controlling the message.  The actions taken by DCF to enforce the regulation, both in 2002-2003 against the Appellant, as well as 2022, make it clear that the government intends to transmit its own message, and not the provider's.  This is not "mere certifying."  It is a long-term commitment to the victims and children of the perpetrators of domestic violence.

## A.    <u>History of court-ordered BIP shows that it is clearly government speech</u>

The State of Florida has made it abundantly clear that it is the State who is

providing the message when it comes to Batterers' Intervention Programs and Florida has a lengthy history of actively regulating the message in their court-ordered BIPs. Since 1995, there have been statutes in place that mandate and control BIP curriculum, scheduling, format, and content. (ECF No. 83 p.4-10, ¶¶ 1-19) These statutes create standards and requirements for uniformity of BIP education across the state. (Id. ¶¶ 2-4). From 2007-2011, and now since 2022, there have been rules that govern all aspects of BIP including program requirements, program curriculum, facilitator eligibility and monitoring. (Id. ¶ 13). Despite closing the OCMBIP in 2012, the statutes continued to mandate and control the BIP scheduling, format, and content, with oversight at the local level (Id. ¶ 6). There has never been a time since 1995 that the State did not require the educational model for BIP, a course length of 29 weeks, and most importantly the power and control model. (Id. ¶ 3, 7). The State has never moved away from the purpose of the BIP in that "[t]here should be standardized programming available to the justice system to protect victims and their children and to hold the perpetrators of domestic violence accountable for their acts." (Id. ¶¶ 2, 6). There can be no dispute that historically, the State controlled the BIP, and the message provided in BIP courses across Florida.

Plaintiff argues that "at best", Defendant had control to determine curricula between 2007 and 2013 due to rule 65H-2.005, Fla. Admin. Code, when the Regulation was first promulgated. (ECF No. 82, p.17). Notwithstanding that the

12

Florida statutes mandating requirements for court-ordered BIP remained in place, it is clear from the record that DCF was controlling the message when it was in charge of certifying and monitoring court-ordered BIP, because in 2002-2003, they attempted to work with Plaintiff to use a curriculum that could be certified. This can be seen in a letter to the Appellant from DCF explaining the outstanding issues with the application and what requirements needed to be met. (ECF No. 83-29) This can also be seen in additional letters during that time period.  See (ECF Nos. 83-24, 83-26 and 83-28).  To state that DCF had no control over the curricula of court-ordered BIP for the six years before the Regulation was first promulgated in 2007 is not plausible.

The District Court found that in evaluating the history of the expression of the issue that "…construing this record—particularly the murky history involving the State's past acceptance of Plaintiff's BIP speech—in the light most favorable to Plaintiff leads this Court to find that this factor is, at most, mixed with regard to whether the State has historically sought to convey its message through BIP providers. But this factor is not dispositive…" (ECF No. 102 p.12)

The Department maintains that the record is clear that the message of court-ordered BIP has traditionally been communicated on behalf of the government. *Cambridge* 942 F.3d at 1232.

### B.    Court-ordered participants would reasonably believe that the government has endorsed the message of BIP

The endorsement prong of the analysis of whether speech is government speech evaluates whether observers reasonably believe the government has endorsed the message. *Cambridge* 942 F.3d at 1248.  The statutes previously discussed and the Regulation at issue here all regulate court-ordered BIP. (ECF No. 83, p.5-6, ¶¶ 1- 4). The BIP contains a particular message that the government wishes to express to its court-ordered participants, contained within the curriculum.  (Id., pp.5, 9, ¶¶ 3, 17-18). The receivers of the BIP message are the participants court-ordered to attend. (Id., pp.4-5, ¶ 1). The relevant legal standard does not require that DCF provide the message directly. As the court stated in *Summum*, the government "may exercise this same freedom to express its views when it receives assistance from private sources for the purpose of delivering a government-controlled message." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009) (cleaned up).  "[G]overnment actions and programs that take the form of speech do not normally trigger the First Amendment rules designed to protect the marketplace of ideas." *Walker v. Tex.Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015) (cleaned up).

Appellant has focused on the speech between himself and his patients in therapy instead of on the speech between provider and court-ordered BIP participants for his argument.   Appellant used the term "therapy" to describe his

14

own BIP services to persuade the Court that court-ordered BIP is therapy in an attempt to couch it as private speech. (ECF No. 82, p.19). But the provider of court-ordered BIP is not a therapist, and the court-ordered participants are not patients. (ECF No. 89-1 ¶5). The provider is a facilitator and an instructor, and the court-ordered participants their involuntary students. *Id.* Court-ordered BIP is not treatment, it is programming. § 741.32, Florida Statutes. A therapist does not use a curriculum to treat his patients.

Appellant identified in his Motion for Summary Judgment the distinction that Appellee has stated all along – the Regulation applies only to Court-ordered BIP, pursuant to § 741.281, Florida Statutes. (ECF No. 82, p.18-19) People who voluntarily attend BIP may do so with a program that has not been certified by DCF. The Regulation does not govern those attendees or that program. As a provider to those folks, Appellant may use any method he chooses to educate those participants. Each participant has that choice. As Appellant seemed to indicate, the perception of the message depends on the listener. A voluntary patient would assume it is the private speech of his therapist. A person court-ordered by a judge to attend a certified BIP course would "closely identify" this message with the government. *Cambridge*, 942 F.3d at 1234.

Plaintiff continues to compare court-ordered BIP to treatment in his argument, citing an example that a person ordered to attend drug or alcohol

counseling may choose Alcoholics Anonymous as their treatment. (ECF No. 82 p.19). Treatment for drug or alcohol abuse is tailored to the individual and does not involve a curriculum.  In Plaintiff's hypothetical, the person is choosing to use AA as their *choice* of treatment.  The persons ordered to attend BIP pursuant to § 741.2811, Florida Statutes, do not have a choice. The only choice the participants have is the choice of certified BIP provider.  Appellant states this is a considerable amount of self-determination. (ECF No. 82 p.19) But the participant is not choosing his curriculum, only his provider.  The participant cannot run from the message of court-ordered BIP.

Appellant also suggested as evidence of lack of endorsement that there is no government official in the court-ordered BIP classroom. (ECF No. 82 p. 20) As stated above, this is not necessary.   It is appropriate for DCF to seek providers who are willing to speak the message they wish to communicate. *Summum*, 555 U.S. at 467. The identity of the speaker for BIP, though a private person, is vetted by DCF and chosen by DCF to speak on its behalf. When a private person is chosen to speak the message of the government, it is part of the government's "own operations". *Gundy*, 50 F.4th at 80 (11th Cir. 2022).  "And even though the…speaker is a private party, the fact that a private party takes part in the propagation of a message does not extinguish the governmental nature of the message or transform the government role into that of a mere forum-provider." (*Id.)* Appellant could only be permitted to

16

communicate the message of the court-ordered BIP program if he is certified by DCF.

The District Court found that "observers would reasonably believe the government has endorsed the message of a certified batterers' intervention program provider during a certified BIP session, because the program itself is State-created, the State has determined that it is a required condition of supervision for certain offenses, and the only reason a court-ordered participant would be observing the certified BIP provider's speech is because the government has required them to attend the program." (ECF No. 102 p.13) The Court went on to say that:

> as Defendant points out, the challenged regulation in this case only governs certification for *court-ordered* BIP services. ECF No. 83 at 19–20. The fact that Plaintiff may provide his own uncertified therapy to patients who voluntarily seek him out says nothing about whether an observer of court-ordered BIP services would reasonably believe the government has endorsed the message of those non-voluntary sessions. In short, this factor also favors Defendant.

(Id. p.13-14)

### C.    The claim that the government has never exercised control over the message of court-ordered BIP fails

Appellant claims that without direct control over the message, there is no control, citing *Cambridge* and *Walker*. (ECF No. 82 p. 20) Appellant discussed *Walker's* license plate designs and the finding that the government had final approval authority over them and could "reject any that was deemed inconsistent."    DCF

17

relies on *Walker* as well.    Much like the government agency in *Walker*, who did not create the license designs but reviewed and approved them, DCF has final approval over the curricula providers intend to use and have the authority to reject any that are deemed inconsistent with the message of the government.  The record clearly shows that the state agency has exercised that authority twice against the Appellant. (ECF Nos. 83-24, 83-26, 83-28, 83-29) (ECF No. 81-1, ¶ 6-7).  DCF has absolute discretion to reject any curriculum that does not comply with the Regulation.   (ECF No. 89-1, ¶ 9).

Appellant argued that there is no standard curriculum, and the only guidelines are in the Regulation itself. (ECF No. 82, p.21) However, those who have experience in BIP understand the various curricula that address the power and control tactics. (ECF No. 89-1, ¶¶ 4, 5, 6, 8). The Appellant himself stated he had differences with the power and control model – he preferred the model he had been using for 16 years that promoted psychological, medical and spiritual reasons for battering. (ECF No. 83-31)

Essentially, Appellant argues that if the government is not creating the curricula, it cannot be government speech.  But like the license plates in *Walker*, and the monuments in *Summum*, or the school-endorsed business banners in *Mech*, the medium for the message need not be created or written by the government.  The government need not draw out the designs, the government need not create the art

and the government need not write the script for the business banners. But the message was still the government's and so the courts held that the speech was government speech.

Appellant attempted to compare facts in *New Hope Family Services, Inc., v. Poole*, 966 F.3d 145 (2d Cir. 2020) to court-ordered BIP because the government argued in *Poole* that simply because the adoption agency was licensed by the state, the agencies speech was government speech. The court in that case found that the factors did not favor the agency's speech being government speech. The statute at issue expanded the persons who "may adopt" to include same-sex and unmarried couples but the statute did not *mandate* the agency to approve every adoption. *Id* at 165. The statute in *Poole* does not compel an agency to change its policies.

In our case, DCF does not argue that certification is the sole basis for finding that the curriculum is government speech. *Poole* is not analogous to the regulated messaging of the court-ordered BIP program. The Regulation does require certain policies be followed. The Appellant's curriculum was also rejected not just in 2002-2003, but also in 2022.

The District Court distinguished the Regulation in our case from the situation in *Poole.* "The challenged regulation is not a general licensing provision. Nor does it merely constitute approval of a professional's minimum qualifications to participate in a specialized practice, untethered from any government message."

19

(ECF No. 102 p.17)  The Court also states that "by monitoring and certifying who gets to participate as a BIP facilitator for court-ordered participants, the State of Florida is ensuring that the BIP message is consistent with the Legislature's goal of creating "standardized programming available to the justice system to protect victims and their children and to hold the perpetrators of domestic violence accountable for their acts." (Id. p.16-17)

The Regulation at issue here is government speech.  The Regulation compels providers of court-ordered BIP to address tactics of power and control, mandating topics and prohibiting others.  The Regulation serves to shape, control and endorse the message of the government, in a program established by the government. Historically, the message has been conveyed by the government through this government program first established in 1995.  Finally, the Regulation does not govern all Batterer's Intervention Programs, only those that serve court-ordered participants, pursuant to § 741.281, Florida Statutes.

The District Court found that, despite the claims of the Appellant, the record showed that when the Appellant applied for certification in the early 2000s, his application was not approved in part because of the content of his proposed BIP program. (ECF No. 102 p.15) The Court continued:

Here, the undisputed facts demonstrate that the Department maintains direct control over the message conveyed during certified BIP sessions. The Department of Children and Families requires providers to submit applications for certification before a provider may be placed on the agency's "list of certified

BIP programs available to the judicial branch for referring domestic abusers to certified programs." ECF No. 83-32 at 2. The Department has "BIP Certification Specialists" whose job includes working with applicants to assist with the certification process. *Id*. ("The application process for certification is very detailed and BIP Certification Specialists are provided to applicants for aid and support."). If an applicant's program does not comply with statutory and regulatory requirements—including content requirements—the Department's BIP Certification Specialists may work with the applicant to conform their content to State requirements. *Id*. ("I worked with Plaintiff's office for several months to try and certify his program."). Ultimately, the State exercises final approval authority over which providers are certified to provide court-ordered BIP services. Accordingly, this Court finds this factor also favors Defendant's position that a provider's speech during a certified batterers' intervention program session is government speech.

(ECF No. 102 p.15-16)

The District Court summed it up best when it stated:

> In short, the question in this case is whether someone who wants the privilege of participating in State-created and involuntary standardized programming for court-ordered participants forfeits their right to free expression during their facilitation of that program. The answer to that question is a resounding "yes." As a result, Defendant is entitled to summary judgment on Plaintiff's free expression claim.

> The District Court was correct in its determination that government speech is present, therefore entitling DCF to summary judgment as to the Appellant's free expression claim.  The ruling must be affirmed.

## II.    <u>The Regulation is not a violation of Appellant's First Amendment Right to Free Exercise of Religion because the speech he wishes to exercise is not private speech</u>

As stated above, the speech involved in court-ordered BIP curricula is not private speech, it is government speech, and thus not protected by the Free Exercise

Clause. *Gundy* 50 F.4th at 81. The curriculum is a government message authorized by a government agency as part of a government program that is not open to indiscriminate use.  By any and all analyses under *Cambridge*, *Walker*, *Summum*, *Gundy* and *Shurtleff*, Regulation 65H-2.017, Fla. Admin. Code R., meets the test of government speech.

The Regulation governs the curricula, but it does not exclude religious providers, or mandate only secular providers.  As Mr. Tarrance's affidavit explained:

> Dr. Nussbaumer's Groveland Free Church is not prevented from being certified simply because they are a Christian church. Salvation Army is a Christian faith organization and is a certified provider of BIP in numerous counties throughout Florida; Healing Hearts Ministry Outreach is another Christian faith organization that is certified as a BIP provider in Florida. (ECF No. 83-32, ¶ 18)

Appellant stated he was certified and engaged in BIP with the State knowing of his faith-based curriculum, but he has provided no evidence of this beyond his self-serving affidavit. (ECF No. 82, p.27) Based on the evidence provided by the Appellee, it is not plausible that Appellant was certified by DCF to provide BIP to court-ordered participants.  The evidence shows Appellant's curriculum was denied approval in 2002 and 2003. (ECF Nos. 83-26, 83-28, 83-29) When the time came to submit a copy of his curriculum in 2022, Plaintiff submitted substantially the same curriculum from 2002-2003. (ECF Nos. 83-33, 83-34) Therefore, it can be concluded that at no point did Appellant submit a curriculum that could obtain approval by DCF and that would have allowed his certification.  Appellant made it clear in his correspondence to DCF in September 2003 that he did not agree with the

teachings of power and control. (ECF No. 83-31) He also let DCF know in that letter that he was seeking a religious exemption for his BIP program. *Id*. That letter shows that Appellant was running a BIP program with a different model of curriculum outside of the requirements of the statute and not certified by DCF.

Appellant states that when government policy mandates the scrubbing of all references to religion as a condition of participation, the Supreme Court finds it violates the Free Exercise Clause. However, the Supreme Court has also held that when the message is government speech, that speech is not subject to First Amendment scrutiny. *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009). It is also important to remember that there were multiple reasons for the Appellant not being certified, including disagreement over the model used, group versus individual sessions, and the number of sessions required. As established by the Legislature, the purpose is to provide uniform consistent programs for those in court-ordered BIP. The program will be a psychoeducational model that employs a program based upon the power and control model. The batterer shall be held accountable for acts of domestic violence and the program must be at least 29 weeks in length. If a provider wishes to maintain a curriculum that is religious based or contrary to the criteria set out by the government, the provider may provide their services to other patrons, but the provider will not be certified by DCF for court-ordered BIP services. The Legislature and the Department require consistent,

uniform programs to be offered to those required to participate in court-ordered BIP

services.  Those that do not wish to meet the criteria for the certification do not have

to become certified.  The government speech in this case does not prevent the

Appellant from providing his services to private clients.

    The District Court correctly found that the Appellee was entitled to summary

judgment on the free exercise claim as this was government speech, stating:

> "[T]he government is not liable for suppressing the free exercise of religion
> when it restrains only its own expression." *Cambridge Christian Sch.*, 115
> F.4th at 1295 (citations and quotation marks omitted). "In other words, the
> government's own speech cannot support a claim that the government has
> interfered with a private individual's free exercise rights." *Id*. Here, because a
> provider's speech during a certified batterers' intervention program session is
> government speech, a restriction on faith-based content as part of that speech
> cannot support a claim for violation of the Free Exercise Clause.

(ECF No 102 p.18)

    The decision of the District Court was proper and must be affirmed.

## <u>CONCLUSION</u>

    Appellant lacked the necessary proof of each element of his claim that

Defendant violated his First Amendment rights. The undisputed facts showed that

rule 65H-2.017, Fla. Admin. Code R., governs the curriculum in court-ordered

Batterers' Intervention Programs pursuant §741.281, Florida Statutes, is government

speech.  While the Appellant attempts to paint a picture that the issue is only based

on religion, it actually has been shown that the Appellant disagrees with multiple

aspects of the criteria set forth in statute and code.  The District Court correctly found

that the issues involved in this case involve government speech.  As it is government speech, it is not subject to First Amendment scrutiny.    Therefore, this Court should affirm the decision of the lower court.

Respectfully submitted,

JAMES UTHMEIER
ATTORNEY GENERAL

/s/ Christopher Sutter
CHRISTOPHER SUTTER (FBN# 0422215)
Senior Assistant Attorney General
Office of the Attorney General
South Florida Civil Litigation Bureau
110 SE 6th Street, 10th Floor
Ft. Lauderdale, Florida 33301
Tel. (954) 712-4600
Christopher.Sutter@myfloridalegal.com
Attorneys for Appellee DCF

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS, TYPEFACE REQUIREMENTS AND TYPE-STYLE REQUIREMENTS

1.    This response complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this response contains 5800 words.

2.    This response complies with the typeface requirements of Fed. R. Civ. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word processing program in 14 point Times New Roman.

s/   Christopher Sutter
CHRISTOPHER SUTTER (FBN# 0422215)
Senior Assistant Attorney General

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 28, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. The system will automatically send a notification to the counsel of record below:

Jeremy D. Bailie, Esq.
Weber, Crabb & Wein, P.A.
5453 Central Ave.
St. Petersburg, FL  33710
Email: Jeremy.Bailie@webercrabb.com
*Attorneys for Appellant Nussbaumer*

/s/ Christopher Sutter
CHRISTOPHER SUTTER
Senior Assistant Attorney General